UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**SUSAN L. TURCOTTE**

                           **Plaintiff,**

               **-v-**                                 **8:16-CV-1100**

**COMMISSIONER OF SOCIAL SECURITY,**

                           **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Charles E. Binder, Esq.
Binder, Binder Law Firm
Suite 501
485 Madison Avenue
New York, NY 100022
Attorney for Plaintiff

Benil Abraham, Esq.
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On October 11, 2013, plaintiff protectively filed an application for supplemental security income. Her claim was initially denied on December 10, 2013. Thereafter, plaintiff filed a request for a hearing, and a hearing was held on June 4, 2015. Administrative Law Judge Carl Stephan issued an unfavorable determination on the claim. The Appeals Council denied plaintiff's request for review. Plaintiff brought an action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for benefits.

Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 8, 9). For the reasons set forth below, the court concludes that the Commissioner's decision should be reversed and the matter remanded for further proceedings.

## DISCUSSION

### A. Legal Standard

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*,

221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

First, the ALJ found that plaintiff had not engaged in substantial gainful activity from her alleged onset date through his date last insured. (Tr. 23). The ALJ then concluded that plaintiff's seizure disorder, bipolar disorder, panic disorder and history of alcohol abuse were severe impairments. (Tr. 23-24). The ALJ determined, however, that plaintiff's seizure disorder did not meet the criteria of Listings 11.02 or 11.03, and that her mental impairments did not meet or medically equal the criteria of Listings 12.04 or 12.06.

Next, the ALJ discussed the evidence and concluded that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels

> but with the following nonexertional limitations: the claimant
> should avoid work at heights, the operation of dangerous
> machinery, climbing ladders and the operation of a motor vehicle.
> She is able to perform simple, unskilled work and is able to make
> necessary judgments on simple work-related decisions. She is able
> to have occasional interaction with the public and frequent
> interaction with co-workers and supervisors.

(Tr. 26).

With regard to plaintiff's seizure disorder, the ALJ assigned the opinion of Dr. Azar, plaintiff's former treating neurologist great weight, and concluded that plaintiff should avoid work at heights, the operation of dangerous machinery, climbing ladders, or the operation of a motor vehicle. With respect to plaintiff's mental functioning, the ALJ noted that plaintiff began

treatment in March 2013, and that she was diagnosed with a panic disorder with agoraphobia, post-traumatic stress disorder, bipolar disorder, and alcohol abuse. (Tr. 26). The ALJ noted that although treating source records suggest that plaintiff has difficulty interacting effectively in groups, he concluded that her testimony suggests that she is able to work effectively with family and friends, and therefore found that she is able to perform simple, unskilled work, make necessary judgments on simple work-related decisions, and occasionally interact with the public and frequently interact with co-workers and supervisors.

The ALJ considered plaintiff's symptoms, but concluded that while her medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 28). In support of this conclusion, the ALJ discussed plaintiff's testimony that she would be unable to perform even a simple job due to the possibility of seizure activity and depression. The ALJ also noted that she is able to maintain her personal hygiene unless she experiences a seizure, she does chores when able but relies on her 75 year old mother and niece to assist her; she cooks in the microwave oven[1] and does laundry, she eats, naps, sits on the deck, watches television, and uses a computer for Facebook.[2] The ALJ then stated that he found "limited substantive support" for plaintiff's allegations. The ALJ compared plaintiff's testimony

---

[1] Plaintiff testified, when asked about whether she cooks, that she does not cook very often and usually has "like, microwave dinners that I won't forget is on the stove, that type of thing." (Tr. 60).

[2] The Court notes that a review of the hearing transcript indicates that plaintiff explained that she does not have the attention span for indoor hobbies such as knitting, sewing, reading, puzzles or crafts; and that she watches "some" TV, but "not much," and cannot concentrate on a 30 minute show. (Tr. 60-61). She further explained that she gets on the computer to check her Facebook account once a month or once every two months. (Tr. 61).

describing a limited ability to perform household tasks with her Adult Function Report that stated "she is able to clean her home, cook meals,[3] pay bills, go shopping and play video games on the computer[,] clean[] the birdcage and her cat's litter box [and] feed her pets." (Tr. 27). The ALJ also noted that she reported cleaning, doing laundry, washing dishes, and vacuuming. (Tr. 27). Based on this comparison, the ALJ concluded that her testimony at the hearing "is in sharp contrast to statements made by the claimant at the time of filing her application."[4] (Tr. 27). The ALJ further concluded that her testimony at the hearing was not credible.

With respect to the opinion evidence, the ALJ discussed the submissions of Dr. Cahill, plaintiff's family practitioner, and concluded that his opinion "is of no probative value." (Tr. 28). Dr. Cahill opined, in March 2014, that plaintiff is unable to work in any capacity due to side-effects from her long-standing seizure disorder, which is complicated by depression and anxiety. He found that plaintiff experiences symptoms which frequently interfere with her ability to attend and concentrate, and that she is unable to complete tasks required by even low-level employment. However, the ALJ concluded that these assertions were inconsistent with the clinical findings and diagnostic studies. The ALJ also found that the opinion of Dr. Frank, who she saw at Citizen Advocates for her mental health impairments, was of "no probative value." Dr. Frank stated that plaintiff is unable to work, finding multiple marked limitations. The ALJ pointed out that Dr. Frank stated that plaintiff suffers from suicidal ideations, but that progress reports indicate that suicidal ideation is not present. The ALJ also stated that Dr. Frank's reports indicate that plaintiff

---

[3] While plaintiff did indicate on this form that she can cook meals, she also stated that she gets confused and has "reached into boiling water [and] pulled out hot dogs." (Tr. 178).

[4] The Court notes that the Adult Function Report was completed on October 29, 2013 and the hearing was held June 4, 2015.

has no deficits in attention and concentration though he opined that she has difficulty thinking and concentrating, experiences a flight of ideas, and is easily distractible. (Tr. 28-29).

The ALJ then found that plaintiff had no past relevant work, but considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. The ALJ noted that plaintiff's ability to perform work has been compromised by non-exertional limitations, but concluded that they had little or no effect on the occupational base of unskilled work. Therefore, the ALJ relied on the Medical-Vocational Guidelines and determined that a finding of "not disabled" was appropriate. (Tr. 29).

**C.     Issues In Contention**

Plaintiff argues that the ALJ committed reversible error by: 1) failing to properly weigh the medical opinion evidence and properly determine plaintiff's RFC; 2) failing to properly evaluate plaintiff's credibility; 3) relying on the Medical-Vocational Guidelines.

**D.     Analysis**

1.      RFC Determination/Opinion Evidence

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining

-6-

physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity"; explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight to be assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

Plaintiff first argues that the ALJ did not properly weigh the opinion of treating psychiatrist Dr. Frank. The Court agrees. Dr. Frank opined that plaintiff had marked limitations in her ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform

activities within a schedule and consistently be punctual; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; make simple work-related decisions; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; interact appropriately with the public; as simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them; maintain socially appropriate behavior; adhere to basic standards of neatness; respond appropriately to workplace changes; travel to unfamiliar places or use public transportation; set realistic goals; and, make plans independently. (Tr. 474).

In assigning this opinion of a treating provider "no probative value," the ALJ pointed to specific notes that he believes do not support Dr. Frank's opinion. However, upon review of the record, the Court concludes that the record is not so inconsistent with Dr. Frank's opinion as to justify assigning it "no probative value." As plaintiff observes, the treatment records document episodes of anxiety in family/group settings, she became irritable, anxious, felt scared, had a racing heart rate, and was very fidgety. (Tr. 327). Plaintiff also reported increased anxiety/depression, exhibited an anxious mood, a constricted affect, and minimally impaired insight. (Tr. 329). The records also show poor hygiene, an anxious mood, a constricted affect, and impaired insight. (Tr. 330). Overall, the treatment notes in the record demonstrate a general theme of being sad, down, and anxious, feeling overwhelmed. (Tr. 333, 340, 418, 420-21). These observations are not inconsistent with Dr. Frank's opinion regarding plaintiff's ability to work. The ALJ did not point to other substantial evidence in the record that would contradict this opinion. Moreover, as defendant correctly observes, the remaining factors that an ALJ is required

to consider in assigning weight to the opinion outlined above, such as length of treatment, the opinion's consistency with the record as a whole, and whether the opinion is from a specialist, do not support the ALJ's decision. The Court concludes that the ALJ's conclusion that the opinion should be assigned "no probative weight" is not supported by substantial evidence and that the ALJ erred in this determination. Consequently, the Court concludes that the matter should be remanded for further consideration of the opinion evidence. On remand, the ALJ should evaluate Dr. Frank's opinion considering the applicable factors and provide further explanation regarding what weight, if any, he assigns to the opinion.[5]

Plaintiff also argues that the ALJ erred by not discussing the opinion of Social Security Administration non-examining psychologist Bruni. This psychologist opined that plaintiff was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to maintain socially appropriate behavior and adhere to basic standards of neatness or cleanliness; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and, interact with the general public. In light of the Court's conclusion above with respect to the ALJ's analysis of the opinion of Dr. Frank, on remand, the ALJ should discuss

---

[5] In light of this error, on remand, the ALJ will also be required to re-evaluate his RFC determination. The Court agrees with plaintiff that the ALJ failed to point to substantial evidence to support his decision that plaintiff can perform unskilled simple work with no more than occasional interactions with the public and frequent interactions with co-workers. On remand, the ALJ should further explain the record evidence that supports his RFC determination.

what, if any, weight he assigns to the opinion of Dr. Bruni.

2.  Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. See 20 C.F.R. § 404.1529; see also *Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id*. § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side

-10-

effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3). If the ALJ finds that plaintiff's pain contentions are not credible, he must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008).

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence, and relies on boilerplate language. The Court does not take issue with the ALJ's language, as the ALJ did provide a substantive analysis. However, the Court agrees with plaintiff that substantial evidence does not support the ALJ's credibility determination. The ALJ focused on plaintiff's supposed inconsistent statements in concluding that her allegations were not entirely credible. However, as noted above, in some instances, the ALJ selectively chose which portions of plaintiff's responses to rely on. Moreover, as plaintiff notes, none of the activities mentioned by the ALJ are reasonably comparable to the requirements of even an unskilled simple job. Therefore, on remand, the ALJ should also re-evaluate plaintiff's credibility.

3.  Vocational Expert Testimony

Once the plaintiff shows that she cannot return to her previous work, the Commissioner bears the burden of establishing that she retains the RFC to perform alternative substantial gainful work in the national economy. *Butts v. Barnhart*, 388 F.3d 377, 383) (2d Cir. 2004). In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("Grids"). *Id.* The Grids divide work into

-11-

sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subt. P, App. 2. Each category has its own Grid which takes into account the claimant's age, education, and work experience. Based on these factors, the Grids indicate whether the plaintiff can engage in any other substantial gainful work which exists in the national economy.

Generally, the result listed in the Grid is dispositive on the issue of disability. However, an ALJ may not rely solely on the Grids when non-exertional limitations "significantly diminish" plaintiff's ability to work so that the Grids do not fully address plaintiff's limitations. *See, e.g.*, *Vargas v. Astrue*, 10 Civ. 6306, 2011 WL 2946371, at *13 (S.D.N.Y. July 20, 2011). Consequently, where the nonexertional limitations "significantly limit" the range of work permitted by the exertional limitations, or when exertional impairments do not fit squarely within grid categories, the ALJ is required to consult with a vocational expert. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010); *see also Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairments has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."). The ALJ's determination of whether the impact of the nonexertional limitations "significantly limits" the range of work must be supported by substantial evidence. *See Bapp*, 802 F.2d at 605.

As described above, during the hearing, the ALJ relied on the Medical-Vocational Guidelines rather than consulting a vocational expert. Plaintiff argues that this reliance on the Guidelines was inappropriate. In light of the errors discussed above, on remand, the ALJ should also revisit the Step 5 determination.

## CONCLUSION

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 9) is DENIED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is GRANTED; and it is further

ORDERED that the matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

Date:   August 9, 2017

Norman A. Mordue
Senior U.S. District Judge